FILED

## UNITED STATES DISTRICT COURT FOR THE
### Central District of California (Santa Ana)



| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** **Plaintiff,** | § § § § | |
| **v.** | § § | Civil Case No. 4:19-cv-00896 |
| Matrix Financial Services, LLC **Defendant** | § § § § | 8:20-mc- 00065 CJC (JDEx) |

### Plaintiff's Motion for Sanctions and a finding of contempt

1   The Plaintiff sent a subpoena to Connexum, LLC on August 18, 2020 (Ex A). To date, no production to the subpoena has been provided by the defendants, nor have they filed a motion to quash with any court .

2   This refusal to produce records is causing an unnecessary delay in the original case and is preventing the Plaintiff from identifying parties in this case and is the proximate cause for the delay thus far.

3   At no time did the Defendants file any sort of objection or motion to quash to the subpoena.

4   The Plaintiff requests the court sanction Connexum, LLC $10,000 for not responding to the subpoena in question and hold them in contempt for refusal to respond to the subpoena in question and sanction them $500 per day for each additional day that they continue to refuse to provide a response to the subpoena from the date of service of the subpoena or August 18, 2020.



**Connexum's history and connection with illegal telemarketing**

5   Connexum is a long distance provider that has a troubled history with regards to ille-

gal telemarketing. They were twice sanctioned issued warning letters by the FTC in

2020 alone (see Ex B and Ex C) for routing and transmitting scam telephone calls re-

garding Covid 19 scams and according to the FTC "Investigations....revealed that

connexum is a gateway voice provider for apparently fraudulent robocalls originating

from VOIPmax." on April 3, 2020 with a stern warning that should this traffic continue

the FTC would authorize US voice providers from blocking all calls from Connexum.

6   The Plaintiff also utilized Connexum's long distance records in suing a notorious tele-

marketer Michael Montes, which resulted in a jury trial verdict in Cunningham v Mi-

chael Montes, (17-2516- JDP W.D. Wisconsin 2019).

7   Apparently after the Montes case Connexum has instituted a practice of demanding

exorbitant sums of money in order to process subpoenas in effect, which has the ef-

fect of trying to dissuade a Plaintiff from seeking relevant records from them. In this

case, Connexum claimed that getting phone records would cost something on the or-

der of $15,000. This is designed to provide cover for their customers who are primar-

ily illegal telemarketers and make it prohibitively expensive for a Plaintiff to obtain

simple call records. This is particularly an absurd amonut of money, given that they

complied with a similar request for call records in the Cunningham v Montes case

and gave deposition testimoney for exactly $0 and noted no significant expense.

8   Multiple courts have held that its a defendant's civic duty to respond to subponeas

and absorb those costs and only in cases where the costs are significant should

there be some fee shifting to reduce the costs to a non-significant amount. In Shields

v Elevated Energy Solutions, LLC (Ex D) a court went through an exhaustive analysis of subpona fees relating to a 3rd party phone company and found that "Federal rules do not allow Inteliquent, as a non-party, to force shields to pay a standard processing fee, no matter how small, as a precondition to obtaining documents for which he has properly issued a subpoena." and "Only when the cost of compliance is significant, or a litigant has failed to take steps to avoid undue burden or expense on a non-party may cost-shifting be appropriate". In the Inteliqunet case, the court ruled even a $50 fee is minimal and the non-party must fulfill its civic responsibilites and bear the cost of complinace and directed the telecom company to produce the documents without assessing any fees.

9   Similarly, in this case, the cost is minimal and the defendants have waived any objections to the subpoena by failing to file a motion to quash in a timely fashion or at all.

10  The Plaintiff also requests the court order the defendants to produce the records in question before October 20th, 2020.

Craig Cunningham
   Plaintiff,

3000 Custer Road, ste 270-206 Plano Tx 75075
615-348-1977
10/2/2020

# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS

)  Craig Cunningham
)  Plaintiff, Pro-se
)
)          **v.**          Civ Action          4:19-cv-00896
)
)  Matrix Financial Services, LLC
)  Defendants.

## Certificate of Service

I HEREBY CERTIFY A TRUE COPY OF THE FOREGOING WAS MAILED TO THE ATTORNEY OF RECORD IN THIS CASE AND CONNEXUM.

Craig Cunningham
Plaintiff.

3000 CUSTER ROAD, STE 270-206, PLANO, TX 75075
10/5/2020

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action *ex A*

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Texas

| | |
|---|---|
| Craig Cunningham | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 4:19-cv-00896-ALM-CAN |
| Matrix Financial Services, LLC | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Connexum, LLC

(Name of person to whom this subpoena is directed)

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: *See attached*

Place: 3000 Custer Road ste 270-206 Plano, TX 75075 Or projectpalehorse@hushmail.com

Date and Time: 12 Noon 8/31/2020

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Place: 

Date and Time: 

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **5/1/20**

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

_____
Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Craig Cunningham, 3000 Custer Road ste 270-206, 615-348-1977, who issues or requests this subpoena, are: Plano, TX 75075 Project palehorse@hushmail.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

10/2/2020

Case 8:20-mc-00065-CJC-JDE   Document 1   Filed 10/13/20   Page 6 of 22   Page ID #:6
subpoena for phone records - Craig (projectpalehorse@hushmail.com) - Hushmail

# subpoena for phone records

*ℓ X A*

| | |
|---|---|
| From | **Craig** <projectpalehorse@hushmail.com> |
| To | **support** <support@connexumllc.com> |
| Sent | Tuesday, August 18, 2020 at 6:38 PM |
| Encrypted | No |
| Signed | No |

Sent using Hushmail

*ex A*

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)         **v.**         Civ Action      4:19-cv-00896
)
) Matrix Financial Services, LLC
)   Defendants.

## Subpoena Instructions to Connexum, LLC

1. The Plaintiff requests the following information pursuant to a Subpoena, to Connexum, LLC c/o Christopher Hall, 1122 E. Lincoln Ave ste 203, Orange, CA 92865 via email as requested to support@ connexumllc.com

2. Please produce all account statements and records of payment for Technologic LLC in 2019 and 2020 and any records of communication between Technologic USA, Inc or Technologic, LLC or any agents of either named entity in 2019 and 2020.

3. Please produce all call detail records by Technologic, LLC from any caller ID to 754-215-2575 from Jan 1, 2019 through December 31, 2019.

4. Please produce all call detail records by Technologic, LLC from any caller ID to 615-717-8406 from December 1, 2019 through June 1, 2020. .

5. Please call me at 615-348-1977 or email projectpalehorse@hushmail.com if you have any questions.

Craig Cunningham
Plaintiff,
3000 CUSTER ROAD, STE 270-206, PLANO, TX 75075
8/18/2020



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, DC 20580



Bureau of Consumer Protection
Division of Marketing Practices

Lois C. Greisman
Associate Director

January 29, 2020
*Via Federal Express*

Connexum, LLC
Attn: Chris Cordero, CEO
242 Rangeline Road
Longwood, FL 32750

### <u>Warning Regarding Assisting and Facilitating Illegal Robocalls</u>

Dear Mr. Cordero,

This letter is to provide you with information about laws and regulations enforced by the Federal Trade Commission ("FTC") that may bear upon your business activities as a Voice over Internet Protocol ("VoIP") service provider.

The FTC, the nation's consumer protection agency, enforces the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing practices. Section 310.3(b) of the TSR prohibits "assisting and facilitating" certain specified conduct.[1] Under that provision, "it is unlawful for any person or entity to provide substantial assistance or support to a seller or telemarketer when that person or entity knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a), (c), or (d), or Section 310.4 of the TSR," which prohibit, among other conduct, the following:

- Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution (16 C.F.R. § 310.3(a)(4));

- Misrepresenting a seller or telemarketer's affiliation with any government agency (16 C.F.R. § 310.3(a)(2)(vii));

- Transmitting false or deceptive caller ID numbers (16 C.F.R. § 310.4(a)(8));

- Initiating or causing the initiation of calls that deliver prerecorded messages, unless the person called provided the seller express written permission to call (16 C.F.R. § 310.4(b)(v)); and

- Initiating or causing the initiation of telemarketing calls to numbers listed on the National Do Not Call Registry, unless the person called provided express written

---

[1] A copy of the TSR is attached as Appendix A.

*ex B*

permission to receive calls from the seller or the seller had an existing business relationship with the person called (16 C.F.R. § 310.4(b)(iii)(B)).

The FTC can obtain civil penalties for TSR violations. Each illegal call is subject to a maximum civil penalty of $43,280. *See* 16 C.F.R. § 1.89. In addition, a violation of the TSR is a violation of Section 5 of the FTC Act. *See* 15 U.S.C. §§ 6102(c), 57a(d)(3), 45(a). Accordingly, the FTC has authority to seek both preliminary and permanent injunctive relief to address violations of the TSR. *See* 15 U.S.C. § 53(b). The FTC may also seek the refund of money or payment of damages to address violations of the TSR. *See* 15 U.S.C. § 57b(b).

Combatting illegal telemarketing is a top priority for the FTC, with a special emphasis on halting illegal robocalls.[2] We want you to be aware that the FTC has, for example, brought assisting and facilitating claims against technology companies that knowingly provided software and servers used by illegal robocallers, even though these technology companies did not contract directly with the illegal robocallers. *See FTC v. James B. Christiano*, No. 8:18-cv-00936 (C.D. Cal. filed May 31, 2018).

We also want to bring to your attention that the FTC recently sued a VoIP service provider for allegedly violating the TSR, 16 C.F.R. Part 310. In that case, *FTC v. Educare*, the FTC alleged that defendant Globex Telecom, Inc. assisted and facilitated telemarketers it knew, or consciously avoided knowing, were violating the TSR's prohibitions on calls delivering prerecorded messages. *See FTC v. Educare Centre Services, Inc.*, No. 3:19-cv-00196-KC (W.D. Tex. Am. Compl. filed Dec. 3, 2019).[3]

The FTC has business educational materials that can assist you in complying with the TSR. *See* https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule.

In addition to FTC regulations and the FTC's December 2019 action against a provider of VoIP services, you should also be aware that the United States Department of Justice ("DOJ") recently brought two civil actions against VoIP companies and their owners. In those cases, DOJ alleged that the defendants were committing and conspiring to commit wire fraud by knowingly transmitting robocalls that impersonated federal government agencies. *See* https://www.justice.gov/opa/pr/department-justice-files-actions-stop-telecom-carriers-who-facilitated-hundreds-millions

We hope you will review this letter and the attached materials in detail. Please direct any inquiries regarding this letter to Ian Barlow at ibarlow@ftc.gov or (202) 326-3120.

---

[2] In fiscal year 2019, the FTC received more than 5.4 million complaints about unwanted calls, including more than 3.7 million robocall complaints. The FTC maintains an interactive Tableau Public web page that publishes details about do not call complaints on a quarterly basis. *See* https://public.tableau.com/profile/federal.trade.commission#!/vizhome/DoNotCallComplaints/Maps.

[3] A copy of the FTC's Amended Complaint is attached as Appendix B.

*e X C*

 

April 3, 2020

## VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED AND EMAIL

**To:**   Chris Cordero
Connexum
1122 E. Lincoln Ave.
Suite 203
Orange, CA 92865
ccordero@connexum.com

Scott Kettle
Connexum
17901 Von Karman Ave.
Suite 600
Irvine, CA 92614
sk@connexumllc.com

**Re:**   **Official Correspondence from Federal Communications Commission and Federal Trade Commission**

Dear Mssrs. Cordero and Kettle,

We have determined that Connexum is apparently routing and transmitting Novel Coronavirus Disease (COVID-19) scam robocall traffic originating from VoIPMax. **We request that you cease routing and transmitting such traffic immediately.**

On March 13, 2020, the President declared a national emergency concerning the COVID-19 outbreak.[1]  Fraudsters and unscrupulous actors have taken advantage of this national health crisis to send scam robocalls to consumers across the United States.  These unwanted robocalls include fraudulent offers of COVID-19 home testing kits.  This activity has the potential to inflict severe harm on consumers.  Our agencies will aggressively pursue legal action against

---

[1] Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

*exc*

unlawful robocallers and, where appropriate, pursue legal action against voice providers routing or transmitting such traffic on their networks.[2]

Investigations conducted by our agencies, in conjunction with the USTelecom Industry Traceback Group, revealed that Connexum is a gateway voice provider for apparently fraudulent COVID-19 robocalls originating from VoIPMax. We will take all necessary and appropriate action to prevent these robocalls from entering U.S. networks.

**If after 48 hours of issuance of this letter Connexum continues to route or transmit harmful robocall traffic from VoIPMax, the FCC will authorize other U.S. voice providers to block all calls from Connexum and take any other steps as needed to prevent further transmission of unlawful calls from Connexum, and we will evaluate whether further action is appropriate in connection with your activity.**

Please direct any inquiries regarding this letter to Kristi Thompson of the FCC at Kristi.thompson@fcc.gov or 202-418-1318 or to Ian Barlow of the FTC at ibarlow@ftc.gov or 202-326-3120.

Sincerely,

Rosemary C. Harold
Chief, Enforcement Bureau
Federal Communications Commission

Lois C. Greisman
Associate Director, Division of Marketing Practices
Federal Trade Commission

---

[2] The Federal Trade Commission recently obtained a temporary restraining order and a preliminary injunction against a VoIP provider, Globex Telecom, for assisting and facilitating illegal robocalls. https://www.ftc.gov/news-events/press-releases/2019/12/court-halts-operations-voip-service-provider-after-ftc-ohio

*eXD*

United States District Court
Southern District of Texas
**ENTERED**
September 23, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOE SHIELDS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00390 |
| | § | |
| ELEVEATED ENERGY | § | |
| SOLUTIONS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

This discovery dispute requires me to decide whether Plaintiff Joe Shields ("Shields") should be required to pay a $50.00 fee to obtain documents he has subpoenaed from non-party Inteliquent, Inc. ("Inteliquent"). Although a relatively small amount of money is at stake here, the underlying issue is one that often confounds litigants, non-parties, and courts: when may a non-party shift fees and costs to the party serving a subpoena? Few district courts in the Fifth Circuit have written on this topic. I hope this opinion provides some guidance for those courts having to decide who should be required to shoulder the financial burden of complying with a subpoena directed to a non-party.

### BACKGROUND

In this lawsuit, Shields alleges that the Defendants—various individuals and entities engaged in the business of selling solar power systems—initiated unsolicited and unauthorized telemarketing calls to his phone number in violation of the Telephone Consumer Protection Act and Texas Business and Commerce Code § 305.053.

In August 2020, Shields issued a narrowly tailored subpoena to Inteliquent, a long-distance telecommunications carrier, seeking to obtain the name and contact information for the entity that used two phone numbers to call him on specified dates and times in April and July 2020. Upon receipt of the subpoena, Inteliquent's counsel sent Shields a lengthy email. The email explained that Inteliquent is a large provider of wholesale communications services, carrying around one billion minutes of traffic daily.[1] As a direct result of its vast business operations, Inteliquent routinely receives subpoenas from civil litigants. According to the email sent to Shields, "the burden of compliance imposed upon Inteliquent is real."[2] Dkt. 26-1 at 3. To help defray the costs of complying with these civil subpoenas, Inteliquent has put into place a "civil subpoena processing fee," which varies depending on the quantity of phone numbers for which customer-related information is sought. *Id.* "This fee covers all such common costs for the processing of our compliance response to a subpoena seeking customer-identifying information for a quantity of numbers in a matter of civil litigation to which [Inteliquent is] a non-party." *Id.* at 3–4. The standard processing fees are as follows:

---

[1] One billion minutes is a lot of minutes. To put that figure into perspective, one billion minutes amounts to a tad over 1,902 years.

[2] Inteliquent notes that it "receives a disturbing quantity of subpoenas that are at least partially or even entirely erroneous with reference to one or more numbers that are not or have never been in service with our company." Dkt. 26-1 at 3.

| | |
|---|---|
| - **Tier 1** (1 or 2 numbers): | $50.00 |
| - **Tier 2** (3 to 5 numbers): | $75.00 |
| - **Tier 3** (6 to 9 numbers): | $100.00 |
| - **Tier 4** (10 or more numbers): | Individual Case Basis Fee ("ICB fee"). |

[3]

Inteliquent's letter raises several blanket objections to the subpoena,[4] but readily acknowledges that "upon receipt of the standard processing fee provided for in our civil subpoenas policy ($50.00 – a Tier 1 request), we are willing to withdraw the [objections] and process this subpoena." Dkt. 26-1 at 5.

Shields strongly objects to paying the $50 processing fee, labelling the charge a "profiteering fee." Dkt. 26 at 2. According to Shields, who is representing himself *pro se*, "Inteliquent is attempting to extort money for profiteering purposes from those seeking to identify an entity responsible for the illegal Solar telemarketing calls." *Id.*

## ANALYSIS

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas to non-parties. The rule provides that a party may serve a subpoena commanding a non-party "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii). A litigant is entitled to use a Rule 45 subpoena to "obtain discovery

---

[3] Inteliquent, Civil Subpoena Policy (December 31, 2019), https://www.inteliquent.com/getmedia/ad7784c0-bc44-47b8-8820-d061d6daba00/Civil-Subpoena-Policy-20200101.aspx.

[4] The objections are, in my view, simply placeholders with little, if any, applicability to the present case. The objections include the standard "unduly burdensome, overly broad, and neither relevant to nor proportional to the needs of the litigation," "attorney client and work product rights against production of privileged information," and "confidential and proprietary information." Dkt. 26-1 at 3. Given that all Shields is requesting here is identification of the entity who utilized two phone numbers at very specific dates and times, the objections are without merit.

regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).

Our judicial system is based, in part, on the principle that, if properly summoned, every person has a civic duty to testify regardless of the financial burden imposed by doing so. *See Hurtado v. United States*, 410 U.S. 578, 589 (1973) ("It is beyond dispute that there is in fact a public obligation to provide evidence . . . no matter how financially burdensome it may be."). As the United States Supreme Court explained more than a century ago:

> [T]he giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned, and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public. The duty, so onerous at times, [is] necessary to the administration of justice according to the forms and modes established in our system of government.

*Blair v. United States*, 250 U.S. 273, 281 (1919). The Fifth Circuit has also acknowledged the "fundamental responsibility of every person to give testimony," *Garner v. Wolfinbarger*, 430 F.2d 1093, 1100 (5th Cir. 1970), and "the duty to provide evidence has long been considered to be almost absolute." *In re Grand Jury Subpoena Duces Tecum*, 555 F.2d 1306, 1308–09 (5th Cir. 1977).

Because the cost of complying with a subpoena is generally considered part of the public duty of providing evidence, district courts across the country routinely hold that a non-party is required to pay its own costs for complying with a Rule 45 subpoena, especially when those costs are minimal. *See id.* at 1308 ("As a general rule, a witness or

the recipient of a subpoena duces tecum is required to bear the costs of compliance."); *Gould v. O'Neal*, No. 17-100 (JMV), 2019 WL 4686991, at \*4 (D.N.J. Sept. 26, 2019) ("[A] nonparty responding to a subpoena is typically required to pay its own costs of production."); *Sakhil Ctr. at Doral Condo. Ass'n v. Hanover. Ins. Co.*, No. 18-21659-Civ-Scola/Torres, 2019 WL 7881626, at \*1 (S.D. Fla. Mar. 21, 2019) ("A nonparty is usually required to pay its own costs of production, so long as the costs do not represent an undue burden or expense."); *Miller v. Allstate Fire & Cas. Ins. Co.*, No. 07-260, 2009 WL 700142, at \*2 (W.D. Pa. Mar. 17, 2009) (same); *Honda Lease Tr. v. Middlesex Mut. Assurance. Co.*, No. 3:05-CV-1426(RNC), 2008 WL 349239, at \*5 (D. Conn. Feb. 6, 2008) ("Typically, a non-party is required to absorb the costs of complying with a subpoena duces tecum.") (internal quotation marks and citation omitted).

There is, naturally, a genuine concern that it might be unfair to force a non-party to incur an enormous financial burden in responding to a subpoena. This is especially true when the non-party has no real interest in the underlying litigation. To address this concern, Rule 45(d) provides that there are "two related avenues by which a person subject to a subpoena may be protected from the costs of compliance." *In re Mod. Plastics Corp.*, 890 F.3d 244, 250 (6th Cir. 2018) (internal quotation marks and citation omitted). First, the rule gives district courts the authority to assess fees and costs to parties serving subpoenas as a sanction for failing to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Second, the rule provides that if a district court issues an order compelling compliance with a subpoena, "the order must protect a person who is neither a party nor a party's officer from

*significant expense* resulting from compliance." FED. R. CIV. P. 45(d)(2)(B)(ii) (emphasis added).

Courts across this great country have had numerous opportunities to address the cost-shifting provision of Rule 45(d)(2)(B)(ii). A number of courts have recognized Rule 45's cost shifting as mandatory upon a finding that the costs incurred are significant. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (If "discovery is ordered against a non-party," and "the subpoena imposes significant expense on the non-party, . . . [then] the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (Under Rule 45, if a subpoena imposes significant expenses on a non-party, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"). Despite that hardline rule, the determination of whether particular costs are significant is relative and "an expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution." *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014).

Other "[c]ourts have used a balancing approach to examine the equities of each particular case in order to determine how much cost to shift from the non-party to the discovering party." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397-Marra/Matthewman, 2016 WL 1658765, at *7 (S.D. Fla. Apr. 26, 2016). Those courts consider three factors, "including whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its cost than the

requesting party, and whether the litigation is of public importance." *Sun Cap. Partners*, 2016 WL 1658765, at \*7. *See also DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010); *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010).

This is not a case where the cost of compliance on the non-party is particularly large or excessive—at least with respect to the subpoena at issue. Far from it. Here, Inteliquent is simply being asked to access its computer network to determine the identity of the person or entity assigned two phone numbers. While there might be some costs associated with this task, they are certainly not overwhelming. At the same time, I fully appreciate that while the cost of reviewing, researching, and responding to this subpoena might not be huge, the expenses are likely to represent a significant sum when a company faces hundreds or thousands of subpoenas. I do not ascribe any deleterious motives to Inteliquent's desire to charge a standard civil processing fee. The company simply wants to offset the expense of responding to a growing volume of subpoenas. That is completely understandable.

But the federal rules do not allow Inteliquent, as a non-party, to force Shields to pay a standard processing fee, no matter how small, as a precondition to obtaining documents for which he has properly issued a subpoena. Since some costs can be anticipated in complying with any subpoena duces tecum, Rule 45's provision that a trial court must quash a subpoena "if compliance subjects a person to undue burden," FED. R. CIV. P. 45(d)(3)(A)(iv), "must be read to mean that in the main run of cases the cost of compliance will be assumed as part of the public duty of providing evidence." *In re Grand Jury Subpoena Duces Tecum*, 555 F.2d at 1308. Our judicial system has, in effect, concluded

that a non-party must assume some costs if our justice system is to work efficiently and effectively. *See Matter of Midland Asphalt Corp.*, 616 F. Supp. 223, 225 (W.D.N.Y. 1985) ("Compliance with a subpoena duces tecum ordinarily will result in some inconvenience and costs to the recipient."). Only when the cost of compliance is significant, or a litigant has failed to take steps to avoid undue burden or expense on a non-party may cost-shifting be appropriate. As one district court waxed poetic:

> Any witness who is subpoenaed suffers inconvenience. An individual operating a small business, for example, or a corporation operated by a sole shareholder, may suffer, in like circumstances, more inconvenience than [a major corporation] with its thousands of employees. But this inconvenience, whether suffered by witnesses, grand jurors, or jurors, is part of the price we pay to secure . . . the enforcement of our laws.

*Application of Radio Corp. of Am.*, 13 F.R.D. 167, 172 (S.D.N.Y. 1952).

When the costs of responding to a Rule 45 subpoena are minimal, the non-party must fulfill its civic responsibilities and bear the cost of compliance. I, therefore, overrule Inteliquent's objections to the subpoena and order Inteliquent to respond to the subpoena without assessing a fee of any sort on Shields.

SIGNED this 23 day of September, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

*eKE*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

CRAIG CUNNINGHAM,

      Plaintiff,

                                  Case No.  16-cv-761-jdp

      v.

MICHAEL MONTES JR. and
TOLLFREEZONE.COM, INC.,

      Defendants.

## JUDGMENT IN A CIVIL CASE

      IT IS ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff Craig Cunningham against defendants Michael Montes Jr. and TollFreeZone.com in the amount of $31,500.

Approved as to form this _6TH_ day of February, 2020.

James D. Peterson
District Judge

Peter Oppeneer
Clerk of Court

2/6/20
Date

*ex E*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

CRAIG CUNNINGHAM,

                    Plaintiff,                          SPECIAL VERDICT

        v.                                              16-cv-761-jdp
MICHAEL MONTES JR. and
TOLLFREEZONE.COM, INC.,

                    Defendants.

We, the jury, for our special verdict, do find as follows:

**QUESTION 1:** Did defendants Michael Montes Jr. and his company TollFreeZone.com, Inc. violate the TCPA with calls placed to plaintiff Craig Cunningham's cellular telephones?

        ANSWER: __Yes__ (Yes or No)

*If you answered YES to Question 1, answer Question 2. If you answered NO to Question 1, do not answer any more questions.*

**QUESTION 2:** How many times did defendants violate the TCPA with calls placed to Craig Cunningham's cellular telephones?

        ANSWER: __21__


                                        _Nathan D. Melby_
                                        Presiding Juror

Madison, Wisconsin

Date: __6/11/19__


1



NORTH TEXAS 750
DALLAS TX 750
THU 08 OCT 2020
AESM 1/1 01:22:35

US District Court
411 West Fourth Street
Santa Ana, CA 92701

CLERK

OCT 13 20

Custer Rd Ste 270-206
o, TX 75075